**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

ST. LOUIS HEART CENTER, INC.
and all others similarly situated,

Plaintiff,

v.

VEIN CENTERS FOR EXCELLENCE, INC.,

Defendant.

Cause No. 4:12-cv-00174-RLW

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLASS CLAIMS AND ALTERNATIVE MOTION TO DECERTIFY THE CLASS**

Plaintiff St. Louis Heart Center, Inc. responds to Defendant Vein Centers for Excellence, Inc.'s Motion for Summary Judgment and Alternative Motion to Decertify the Class (Doc. #100) as follows:

## Introduction

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits the sending of fax ads without prior express permission. It is undisputed that Defendant successfully sent 35,212 fax ads to doctors to promote its business between January 5, 2008 and September 15, 2009. It is also undisputed that Defendant did not have prior express permission to send its ads. ECF 87, ¶ 36. To target its fax ads, Defendant used six different lists of doctors of different types. Each broadcast was aimed at one of these six lists and at least 80% of the doctors on each list received one of Defendant's illegal fax ads.

Defendant now seeks summary judgment against the entire class. Defendant argues that because it did not keep records of precisely which targeted doctors were among the more than

80% that it successfully reached, all should lose. Defendant's argument fails because it confuses proof of liability with identification of the victims. Defendant points to no evidence refuting the fact that it broke the law 35,212 times, and there is none. Defendant's motion confuses identification of class members with Defendant's liability to the class as a whole. It would be manifestly unjust to rule that a Defendant is entitled to judgment against a class of people who it has injured by violating the law because Defendant's records do not precisely identify 100% of its victims. Defendant is not entitled to a judgment in its favor and against the class.

In the alternative, Defendant moves to decertify the class because the class members cannot be precisely identified. Defendant's motion for decertification should also be denied. Defendant argues that absent a precise list of every single class member, a class cannot be maintained. By this standard, class actions for many widespread but smaller consumer injuries would be virtually impossible and the purpose of the class action device would be defeated. In fact, the lists in this case are only slightly over inclusive because Defendant was able to reach more than 80% of its intended victims. Under these circumstances the class should stand, and the class members should be able to identify themselves in response to notice after the case is resolved on the merits as is routinely done in consumer class actions.

**Statement of Facts**

Misty Mitra worked as the marketing coordinator at Defendant Vein Centers for Excellence for four years starting in May of 2006. PSOAF, ¶ 9.[1] Mitra described Defendant as a "Full service marketing, graphic design from top to bottom for varicose and spider vein doctors, those who perform those procedures." PSOAF, ¶ 10. Doctors signed up with Defendant for a fee,

1 "PSOAF" refers to Plaintiff's Statement of Additional Facts filed contemporaneously with this memorandum and as part of Plaintiff's Response to Defendant's Statement of Facts [ECF 102].

and then Defendant acted as their ad agency by marketing their practices by television, radio, newspaper, print, and collateral office materials. PSOAF, ¶ 11.

Defendant also advertised itself to get new doctor clients. PSOAF, ¶ 12. Defendant used fax ads to try to attract new clients. PSOAF, ¶ 13. Mitra was in charge of Defendant's fax advertising program. PSOAF, ¶ 14. Mitra purchased lists of targets from InfoUSA. PSOAF, ¶ 15. On June 20, 2007, Mitra purchased a list of 5,884 cardiologists. PSOAF, ¶ 16. On July 27, 2007, Mitra purchased a list of 6,760 vascular surgeons. PSOAF, ¶ 17. Mitra also purchased a list of 1,154 OBGYNs, and 879 dermatologists. PSOAF, ¶ 18. In addition to the InfoUSA lists Mitra also made a list of doctors by downloading 1,157 fax numbers from veindirectory.org. PSOAF, ¶ 19.

Mitra hired WestFax to broadcast Defendant's fax ads to the numbers on the lists. PSOAF, ¶ 20. On January 15, 2008, Mitra used WestFax to blast Defendant's fax ads to its list of 6,758[2] general vascular surgeons. PSOAF, ¶ 21. Of the 6,758 fax transmissions attempted, 5,449 were successful. *Id.* Mitra again used WestFax to blast Defendant's fax ad to its list of general vascular surgeons on March 11, 2008. PSOAF, ¶ 22. This time 5,416 were successful. *Id.* Mitra again used WestFax to blast Defendant's fax ads to its list of general vascular surgeons on June 11, 2008. PSOAF, ¶ 23. This time 5,327 were successful. *Id.*

Mitra next used WestFax to blast Defendant's fax ads to its list of 1,854 OB/GYN physicians on August 11, 2008. PSOAF, ¶ 24. Of the 1,854 transmitted, 1,590 were successfully sent and received by the targets. *Id.* Eight days later on August 9, 2008, Mitra used WestFax to

---

[2] Mitra testified that two doctors on the list were removed before the blast fax because they were existing customers and Defendant only wanted to advertise to potential new customers. Mitra Dep., pp. 30:10-31:3, 34:1-8, 46:15-21.

broadcast Defendant's fax ads to its list of 879 dermatologists. PSOAF, ¶ 25. This time, 781 were successfully sent. *Id.*

Mitra next used Westfax to blast 1,157 faxes to the vein doctors list she downloaded from veindirectory.org on September 16, 2008. PSOAF, ¶ 26. This time, 917 were successfully sent. *Id.* On October 7, 2008, Mitra once again used WestFax to target the 6,758 doctors on the general vascular surgeons list. PSOAF, ¶ 27. This time 5,234 were successfully sent. *Id.* On November 11, 2008, Mitra targeted the vein doctors list again. PSOAF, ¶ 28. This time, 811 were successfully sent. *Id.*

Nearly a year later, on September 15, 2009, Mitra used WestFax to blast a fax ad entitled, "legs take you everywhere," to Defendant's lists of 6,759 general vascular surgeons and 5,884 cardiologists. PSOAF, ¶ 29. The "legs take you everywhere ad" was successfully sent to 4,975 vascular surgeons and 4,712 cardiologists. *Id.* Defendant's fax broadcasts can be summarized as follows:

| Targeted List | Date | Total on List | Successfully Sent |
|---|---|---|---|
| Vascular Surgeons | 1-5-08 | 6,758 | 5,449 |
| Vascular Surgeons | 3-11-08 | 6,758 | 5,416 |
| Vascular Surgeons | 6-11-08 | 6,758 | 5,327 |
| Vascular Surgeons | 10-7-08 | 6,758 | 5,234 |
| Vascular Surgeons | 9-15-09 | 6,758 | 4,975 |
| OB/GYN | 8-11-08 | 1,854 | 1,590 |
| Dermatologists | 8-19-08 | 879 | 781 |
| Vein Directory | 9-16-08 | 1,157 | 917 |
| Vein Directory | 11-11-08 | 1,157 | 811 |

| Cardiologists | 9-15-09 | 5,885 | 4,712 |
|---|---|---|---|

This list shows that more than 80% of the targeted vascular surgeons, 85% of the targeted OB/GYNs, 88% of the targeted dermatologists, 88% of the targeted vein doctors, and 80% of the targeted cardiologists received at least one of Defendant's fax ads. PSOAF, ¶ 30.

Plaintiff's fax number was on Defendant's list of cardiologists. PSOAF, ¶ 31. Plaintiff received Defendant's "leg take you everywhere" fax ad on September 15, 2009. PSOAF, ¶ 32. At his deposition, Plaintiff was shown a copy of Defendant's "legs can take you everywhere" fax ad with a time stamped date at the top that clearly showed the month and date as "9/15/," but that had an illegible year obscured that it looked more like "08" than "09," but could have been either. PSOAF ¶ 33. The copy shown to Plaintiff at his deposition was made by Defendant. R. *Id.* After the deposition, Plaintiff examined an enlarged version of the original fax where he could see that what looked to him like an "8" at his deposition was, in fact, a distorted "9." *Id.*

## Argument

### I. Defendant has not shown it is entitled to summary judgment against the class.

Defendant argues that to maintain a class to judgment Plaintiff must prove the precise identity of every person in the class. ECF 101, p. 4. Put another way, Defendant argues that if every class member's identity cannot be proved with certainty, judgment should be entered against all class members because none can prove their claims. Here Plaintiff has lists that identify the class members with 80% accuracy, and evidence that indisputably shows Defendant violated the TCPA. By Defendant's reasoning, all class members lose because just one of the numbers on Defendant's target lists belongs to someone Defendant intended to harm but failed to harm only because its fax transmission failed. Defendant's reasoning does not make sense and should be rejected.

Defendant cites *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 997 (8th Cir. 2016), but it does not hold all class members lose unless Plaintiff can show their identities with 100% accuracy. *Sandusky* rejected the "heightened ascertainability" standard some courts have adopted and followed *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). *Sandusky*, 821 F.3d at 996. Citing *Mullins*, *Sandusky* states:

> According to the Seventh Circuit, a heightened ascertainability requirement "gives one factor in the balance absolute priority, with the effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase." *Id. See also id.* at 672 (rejecting the Third Circuit's second requirement of an "administratively feasible mechanism" for determining class members), *criticizing Carrera v. Bayer Corp.*, 727 F.3d 300, 304 (3d Cir.2013) (finding a class not ascertainable because the only way to identify members was "retailer records of online sales and sales made with ... rewards cards" or "by affidavits of class members, attesting they purchased WeightSmart"). Affirming the class certification in *Mullins*, the Seventh Circuit held the class was "not vague," "not based on subjective criteria," and did identify "a particular group of individuals ... harmed in a particular way ... during a specific period in particular areas." *Id.* at 660–61. The court so held even assuming there were "no records for a large number of retail customers" and that consumers were "unlikely to have kept their receipts." *Id.* at 661. *See also Rikos*, 799 F.3d at 525 (explaining that for "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.").

*Sandusky*, 821 F.3d at 996 (emphasis added). Like *Sandusky*, other recent federal appellate court have followed this same line of reasoning and adopted the same standard as *Mullins. Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015).

*Sandusky* went on to reverse denial of class certification in a TCPA case where the plaintiff had a list of every single class member. But *Sandusky* did not, as Defendant argues, hold that no TCPA class could be maintained to judgment without such a list. In fact, *Sandusky's* reliance on *Mullins* shows such a result is contrary to its holding.

*Mullins* explained a class is ascertainable if it is defined by "objective criteria" even if "it

would be difficult to identify particular members of the class." *Id.* at 659. In *Mullins*, the plaintiff "sued Direct Digital, LLC for fraudulently representing that its product, Instaflex Joint Support, relieves joint discomfort." *Id.* at 658. In particular, the label for Instaflex proclaimed it was "scientifically formulated" to "relieve discomfort," and "clinically tested for maximum effectiveness." *Id.* In contrast, the plaintiff alleged Instaflex was nothing more than a "sugar pill" and any beneficial effect it might have was only the result of the placebo effect. *Id.* at 658, 673.

The district court certified a class defined as all consumers "who purchased Instaflex within the applicable statute of limitations of the respective Class States for personal use until the date notice is disseminated." *Id.* at 658. The defendant appealed arguing the class was not "ascertainable" because there was no "reliable and administratively feasible way to determine whether a particular person is a member of the class." *Id.* at 661. The Seventh Circuit recognized that the defendant would likely have "no records for a large number of retail customers," and "many consumer of Instaflex are unlikely to have kept their receipts," but nevertheless affirmed class certification. *Id.* The court held that "ascertainability" should be focused on the "adequacy of the class definition itself," and not "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Id.* at 659. The court concluded that "a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be <u>after settlement or judgment</u>, when much more may be known about available records, response rates, and other relevant factors." *Id.* at 664 (emphasis added).

Contrary to Defendant's argument here, *Mullins* flatly rejects the idea that difficulties in identifying particular class members are an impediment to class certification and a judgment. Instead, *Mullins* holds the test is whether the class definition is "objective." *Id.* at 659. *Mullins* identifies three defects that render a class definition not objective: (1) it is too vague; (2) it is

based on subjective criteria; and (3) it is a "fail-safe" class where membership depends on the liability of the defendant to the individual class member. *Id.* at 659-660. Plaintiff's class does not suffer from any of these defects and, therefore, is objectively defined.

1. The Class is not vague.

The class is defined to include, "All persons or entities who, between January 14, 2008 and September 15, 2009, were sent one or more telephone facsimile messages by Westfax on behalf of Vein Centers for Excellence, Inc." ECF 42. The class definition is not vague because it "identif[ies] a particular group, harmed during a particular timeframe, in a particular location, in a particular way." *Mullins*, 795 F.3d at 660.

2. The Class is not subjective.

The class here is also not subjective. A class is subjective where it is defined based on the state of mind of the class members. For example, where the class is defined as persons who were "discouraged" from seeking government assistance, it would be subjectively defined by the objectively unknowable state of mind of each class member. *Id.* Where the class is defined solely based on the defendant's conduct, the class is not subjective. Here the class is defined solely by Defendant's conduct (ie., the faxing of its ads from January 2008 to September 2009), so it is not subjective.

3. The Class is not a fail-safe class.

A "fail-safe" class is one where "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* at 661 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2015)). If a class is "define[d] so that membership does not depend on the liability of the defendant" it is not a fail-safe class. *Id.* The class proposed is not a fail-safe class because a class member cannot "by virtue of losing" be

defined "out of the class." *Mullins*, 795 F.3d at 661.

The most recent federal appellate court to address the issue was the Ninth Circuit in *Briseno.* The plaintiffs brought an action against a cooking oil manufacturer for selling oil labeled, "100% Natural," when the oil allegedly contained oil for genetically modified organisms ("GMOs"). 844 F.3d at 1123. The class was defined to include all persons who purchased the defendants' cooking oil in twelve states. *Id.* at 1124. The defendant challenged class certification on the theory that "there would be no administratively feasible way to identify members of the classes because consumers would not be able to reliably identify themselves as class members." *Id.* The district court nevertheless certified the class and the Ninth Circuit affirmed. *Id.* at 1124-25. In rejecting the defendants' arguments, *Briseno* addressed how such a class could be maintained through judgment on the merits by use of a claims process and without precisely identifying every class member explaining:

> If the concern is that claimants in cases like this will eventually offer only a "self-serving affidavit" as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights. If a Wesson oil consumer were to pursue an individual lawsuit instead of a class action, an affidavit describing her purchases would create a genuine issue if ConAgra disputed the affidavit, and would prevent summary judgment against the consumer. *See Mullins*, 795 F.3d at 669; *accord* Fed. R. Civ. P. 56(c)(1)(A). Given that a consumer's affidavit could force a liability determination at trial without offending the Due Process Clause, we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made.
>
> Moreover, identification of class members will not affect a defendant's liability in every case. For example, in this case, Plaintiffs propose to determine ConAgra's aggregate liability by (1) calculating the price premium attributable to the allegedly false statement that appeared on every unit sold during the class period, and (2) multiplying that premium by the total number of units sold during the class period. We agree with the Seventh Circuit that, in cases in which aggregate liability can be calculated in such a manner, "the identity of particular class members does not implicate the defendant's due process interest at all" because "[t]he addition or subtraction of individual class members affects neither the defendant's liability nor the total amount of damages it owes to the class."

> *Mullins*, 795 F.3d at 670; *see also Six (6) Mexican Workers*, 904 F.2d at 1307 ("Where the only question is how to distribute damages, the interests affected are not the defendant's but rather those of the silent class members."). The defendant will generally know how many units of a product it sold in the geographic area in question, and if the defendant is ultimately found to have charged, for example, 10 cents more per unit than it could have without the challenged sales practice, the aggregate amount of liability will be determinable even if the identity of all class members is not. The Third Circuit recognized as much in *Carrera*. *See Carrera*, 727 F.3d at 310 (acknowledging but not addressing the argument that "[the defendant's] total liability" would not be "affected by unreliable affidavits"). For these reasons, protecting a defendant's due process rights does not necessitate an independent administrative feasibility requirement.

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (emphasis added).

While Defendant ignores *Sandusky's* reliance on *Mullins* and the recent *Briseno* decision, Defendant cites several other cases that are either unpersuasive or irrelevant. ECF 101, p. 5 (citing *Leyse v. Lifetime Enter. Servs., LLC,* __ Fed.Appx. __ , 2017 WL 659894 (2d Cir. Feb. 15, 2017)*; Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, No. 3:13 CV 2085, 2016 WL 75535 (N. D. Ohio Jan. 7, 2016); *Ung v. Universal Acceptance Corp.*, __ F.R.D. __ , 2017 WL 354238 (D. Minn. Jan. 24, 22017).

In *Leyse* the plaintiff sought a class of all persons who received pre-recorded telemarketing calls from the defendant. The plaintiff had no lists of those the defendant targeted and simply proposed to give notice to every subscriber of residential telephone services in New York City. 2017 WL 659894, *2. Plaintiffs reliance on Defendant's target lists in this case is not comparable to blindly canvassing every telephone subscriber in the largest city in the country.

*ASD Specialty* was different because there was evidence some members of the class had consented to receive the defendants fax ads. 2016 WL 75535 at *4. Similarly, in *Ung* the defendant produced several sources of evidence showing that many of the putative class members had consented to receive the challenged text messages. 2017 WL 354238 at *3. In contrast, Defendant has offered no evidence of consent by any class member in this case.

Moreover, *ASD Specialty* followed the very district court decision reversed by the Eight Circuit in *Sandusky*, so it is obviously not a persuasive opinion now.[3]

In *Mullins* and *Briseno*, the classes consisted of consumers of widely distributed common consumer products where there would be little chance there would be documentary evidence of even a tiny fraction of the class members. Moreover, as here no class member could prove his claim without proof he bought the products the defendants sold. In contrast, in the present case, Plaintiff has lists which are only slightly over inclusive of the class members. As the *Briseno* and *Mullins* courts explained, the gap in documentary proof could be bridged by a claim forms process or affidavits even in cases where the documentary evidence would likely identify only a tiny fraction of the class. Here, when the documentary evidence is 80% accurate, the gap can easily be bridged. Moreover, the alternative Defendant seeks is manifestly unjust. A Defendant should not be entitled to summary judgment against a class of thousands of people where it's guilt has been proven simply because it kept records of its victims that were only 80% accurate.

**II. Defendant has not shown the class should be decertified.**

Defendant moves in the alternative for decertification of the class based on the same arguments and case law as it advances for summary judgment. As explained above, these arguments are wrong and should be rejected.

In addition, Defendant argues Plaintiff has not shown he is a member of the class or that Defendant ever sent him its "legs take you everywhere" fax ad. PSOAF, ¶ 32. Defendant's argument is based solely on Plaintiff's owner's confusion over the date the ad was sent during

3 Defendant also cites *ARcare v. Qiagen N. Am. Holdings, Inc.*, No. CV 16-7638 PA, 2017 WL 449173 (C.D. Cal. Jan. 19, 2017), but it was concerned only with standing issues where the plaintiff alleged class member gave permission to receive the faxes.

his deposition. ECF 101, p. 7. This confusion was understandable because the year on the header on the copy of the fax he was shown was illegible:

:

9/15/0[illegible] 6:08 314-993-8350 Ronald A 1/1

St L Heart Center 496

**Legs can take you everywhere!**

PSOAF, ¶ 33. Moreover, the record evidence establishes that Plaintiff was sent Defendant's fax on September 15, 2009. PSOAF, ¶ 32. Mitra testified she ordered a fax broadcast to be sent on September 15, 2009, to "[c]ardiologists," and Plaintiff's fax number was on Defendant's cardiologist target list. PSOAF, ¶¶ 29, 32, 33. Thus all record evidence in the case establishes that Plaintiff was sent the fax on September 15, 2009 and Plaintiff's owner's understandable mistake at his deposition where he read the barely legible year as "08" instead of "09," does not show that Plaintiff is not a member of the class.

## CONCLUSION

For the foregoing reasons, Defendant motion for summary judgment against the class or for decertification of the class should be denied.

Respectfully submitted,

/s/ Max G. Margulis
Max G. Margulis, #24325MO
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 - Residential
F: (636) 536-6652 - Residential
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Brian J. Wanca, # 3126474IL
Ryan M. Kelly, # 6257931IL
Jeffrey A. Berman, # 6196251IL
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Phone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com
rkelly@andersonwanca.com
jberman@andersonwanca.com

Phillip A. Bock #62224502IL
Tod A. Lewis #6256282IL
Bock, Hatch, Lewis & Oppenheim, LLC
134 North La Salle St., Ste. 1000
Chicago, IL 60602
P: 312-658-5500
F: 312-658-5555
Email: phil@classlawyers.com and
tod@classlawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day April 20, 2017, a true and correct copy of the foregoing was served by on all counsel of record by virtue of the Court's ECF/CM system.

/s/ Max G. Margulis