UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS HEART CENTER, INC., individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:12 CV 174 CDP |
| VEIN CENTERS FOR EXCELLENCE, INC., | ) ) ) ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff St. Louis Heart Center, Inc. brought this action under the Telephone Consumer Protection Act, 47 U.S.C. 227(b)(1)(C), alleging that defendant Vein Centers for Excellence, Inc., a marketing firm that provides graphic design and other services to doctors, sent "junk faxes" to Heart Center and thousands of others. I certified a class under Rule 23, Fed. R. Civ. P., with Heart Center as the named representative. Notice was sent to potential class members and one opt out was returned. Plaintiff Heart Center then sought summary judgment and statutory damages for 35,211 unsolicited fax transmissions. I denied summary judgment because, based on the evidence presented, no absent class member could prove that they were "sent" a Vein Centers junk fax, as required by the class definition. Now,

defendant Vein Centers seeks summary judgment, or alternatively, class decertification because of the same lack of proof of class membership.

Based on the Eighth Circuit's recent opinion discussing the 'ascertainability' requirement for class certification, *McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017), and the fact that Heart Center provides no objective criteria or common evidence for identifying potential class members, the class in this case will be decertified. I will deny summary judgment, and this case will proceed to trial as to the named plaintiff only.

## Background[1]

Around 2007 or 2008, defendant Vein Centers hired fax broadcaster Westfax to send out form fax advertisements to thousands of fax numbers belonging to doctors and medical centers. Westfax charged Vein Centers for the 35,212 successful fax transmissions, but not the many attempted transmissions that did not go through. Westfax did not provide a list of the fax numbers which were successfully sent an advertisement, and there are no records available to correctly identify the junk fax recipients. ECF No. 102-7 at 88:4-23.

Plaintiff Heart Center is a corporation owned by cardiologist Ronald Weiss. It claims to have received multiple fax advertisements from Vein Centers,

---

[1] My previous Memorandum and Order issued February 7, 2017, provides greater detail into the background and history of this matter, which has not changed and need not be restated it its entirety here. ECF No. 99.

– 2 –

including one that was part of a Westfax fax broadcast that went to more than five thousand cardiologists on September 15, 2009. ECF No. 106 at ¶ 32. However, the year on the date of the Heart Center fax submitted as evidence is unclear, and when Dr. Weiss was shown the document in his deposition he testified he received it one year earlier, on September 15, 2008. ECF No. 5-4; ECF No. 83-2 at 34:6-36:22.

The Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227(b)(1)(C), prohibits the sending of unsolicited fax advertisements. Heart Center filed this suit under the TCPA on behalf of itself and others who received unsolicited fax advertisements from Vein Centers. With Heart Center as the named representative, I certified a class under Rule 23, Fed. R. Civ. P., with the following class definition:

> All persons or entities who, between January 15, 2008 and September 15, 2009, were sent one or more telephone facsimile messages by Westfax on behalf of Vein Centers for Excellence, Inc. that did not inform the fax recipient both that (1) he or she may make a request to the sender of the advertisement not to send any future facsimile advertisements and that (2) failure to comply with the request, within 30 days, is unlawful.

Using the lists of fax numbers that Vein Centers provided to Westfax for the unsolicited fax broadcasts (which include all the fax numbers to whom transmission was attempted – not just the ones to whom transmission was successful), class notice was sent to potential class members by fax and then U.S.

Mail, if necessary. In response, one class member requested exclusion from the class.

Next, Heart Center sought summary judgment for 35,211 unsolicited fax transmissions. I denied Heart Center judgment as a matter of law because the undisputed evidence did not show that any individual person met the class definition. ECF No. 99. Although Heart Center provided evidence of the *number* of successfully transmitted junk faxes by Vein Centers, there was no evidence of exactly *which* fax numbers were successfully sent the junk faxes, and so the plaintiff class was not entitled to summary judgment. Defendant Vein Centers now seeks summary judgment, or alternatively, class decertification.

## Discussion

### A. Summary Judgment on Class Claims

In determining whether to grant a motion for summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but must, by affidavit and other

evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

Given the lack of evidence as to which fax numbers the junk faxes were successfully transmitted, Vein Centers argues that it is entitled to summary judgment for the same reason I denied it to Heart Center – because no class member can prove that they were "sent" one of the junk faxes. With no classwide proof, Vein Centers maintains that if class members came forward with individual testimony or submitted their own evidence of fax receipt, the court would be required to hold mini-hearings on the evidence in violation of Rule 23.

Heart Center responds that summary judgment is not appropriate here because the facts demonstrate that Vein Centers did violate the TCPA, and any issues with identifying the victims of that violation does not equate to inadequate proof of liability. I agree. The evidence currently before the court does not identify the fax numbers which were successfully sent a junk fax by Vein Centers, but the undisputed evidence shows that Vein Centers violated the TCPA by sending unsolicited fax advertisements. Granting summary judgment in Vein Centers' favor could foreclose valid claims brought later by individuals who were sent the junk faxes at issue in this case. Vein Centers is not entitled to judgment as a matter of law.

## B. Class Decertification under Rule 23

As an alternative to summary judgment, Vein Centers argues for class decertification. When considering class certification, a court "must undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010) (internal quotation marks omitted). "[T]here are no invariable rules regarding the suitability of a particular case filed under … the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008).

According to Vein Centers, the inability to identify potential class members violates Rule 23's class requirements of commonality, predominance, and ascertainability. *See* Fed. R. Civ. P. 23(a)(2) (setting forth the prerequisite for class certification that there be "questions of law or fact common to the class"); Fed. R. Civ. P. 23(b)(3) (setting forth an additional requirement that there be "questions of law or fact common to class members [that] predominate over any questions affecting only individual members"); *McKeage*, 847 F.3d at 998 (discussing "Rule 23's implicit requirement that a class must be adequately defined and clearly ascertainable").

Heart Center contends that precise identification of class members is not required at this stage of the litigation and that members should be able to identify themselves in response to notice, after the case is resolved on the merits. According to Heart Center, the Eighth Circuit rejected the need for a heightened ascertainability standard in *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.(Sandusky)*, 821 F.3d 992 (8th Cir. 2016), and because the fax number lists are only slightly over inclusive – with approximately 80% accuracy – there is sufficient proof to satisfy the Rule 23 acertainability requirement.[2]

**1. Ascertainability**

As discussed in my prior Memorandum and Order of February 7, 2017, the Eighth Circuit addressed a class action similar to this one in *Sandusky*, which also involved violations of the TCPA by the sending of unsolicited facsimile advertisements. 821 F.3d 992 (8th Cir. 2016). The Court of Appeals found a class definition – like the one here which includes all class members who were "sent" a junk fax – to be ascertainable.[3] The court said that the TCPA's "recipient" of the

---

[2] Heart Center states that "more than 80% of the targeted vascular surgeons, 85% of the targeted OB/GYNs, 88% of the targeted dermatologists, 88% of the targeted vein doctors, and 80% of the targeted cardiologists received at least one of Defendant's fax ads." ECF No. 106 at ¶ 30. Vein Centers denies this fact, disagreeing with Heart Center's percentage calculations. Heart Center appears to be taking the *greatest* percentage of successful transmissions per recipient type, whereas Vein Centers thinks the correct calculation is the *average* percentage of successful transmissions per recipient type. Regardless of the method of calculation, all the fax numbers on the lists were not successfully sent a junk fax and therefore, not all persons associated with all fax numbers on the list are proper class members in this case.

– 7 –

fax, or the person or entity with an authorized private right of action, is "the person or entity that gets the fax." 821 F.3d at 997 (citing 47 U.S.C. § 227(b)(1), (b)(3)). Ultimately, the court held that the fax logs in the record, which showed the numbers that received the faxes, are objective criteria that make the recipient clearly ascertainable. *Id*.

Following the release of *Sandusky*, and since my denial of summary judgment for Heart Center, the Eighth Circuit has issued an additional clarifying opinion on class ascertainability: *McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017). In *McKeage*, boat buyers brought a class action suit alleging unauthorized practice of law against defendant boat seller who charged a document fee when selling boats and trailers under form contracts governed by Missouri law. After defendant filed a motion to decertify the nationwide class, the district court required class counsel "to hire reviewers to manually inspect each of [defendant's] customer files in order to determine which contracts contained a Missouri choice-of-law provision, the inclusion of which formed the basis for the nationwide class." 847 F.3d at 997. After the district court granted summary judgment in favor of the class and awarded damages, the defendant appealed. Defendant argued that the district court erred in certifying a class because such certification required an

---

[3] The class definition approved in *Sandusky* was:
> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages regarding lead testing services by or on behalf of Medtox, and (3) which did not display a proper opt out notice. 821 F.3d at 996.

individualized inquiry related to both the identification of the class members and the evidence necessary to establish liability once a class had been identified. *Id*. at 998.

On appeal, the Eighth Circuit reiterated that "[a] class may be ascertainable when its members may be identified by reference to objective criteria," and provided the fax logs in *Sandusky* as an example of such objective criteria. *McKeage*, 847 F.3d at 998-99 (citing *Sandusky*, 821 F.3d at 997-98). The appellate court found the intensive customer file-by-file review process used in *McKeage* to be valid objective criteria for class identification, and affirmed the class certification. *Id*. at 999-1000.

"[A] dispute regarding the method for identifying class members calls for an independent discussion of whether a class is ascertainable." *McKeage*, 847 F.3d at 998. Although the class definition here closely resembles the one approved by the Eighth Circuit in *Sandusky*, there is no "objective criteria," like fax logs, available to clearly ascertain the class members. *Id*. Although Heart Center provides evidence of the *number* of successfully transmitted junk faxes by Vein Centers, there is no evidence of exactly *which* fax numbers were successfully sent a junk fax. Without fax logs of successful transmissions or other such evidence, the only way potential class members could prove they were "sent" junk faxes, as required by the class definition, is through individual testimony.

Heart Center argues that potential class members should be able to identify themselves in response to notice after this case is resolved; however, Heart Center fails to provide any theory of generalized proof of liability that could be presented to the court to make a reasonable determination of class membership. Heart Center mentions, but provides no details on, the use of "a claim forms process or affidavits." ECF No. 105 at 11. But here reliance on claims forms or affidavits is especially troublesome because of the nature of the proof required. Whether someone can actually remember receiving a specific junk fax sent many years earlier raises credibility issues best determined by a trier of fact after testimony subject to cross-examination. This is an appropriate issue for a trial, but not for a claim form or affidavit. *See also Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc. (ASD Specialty)*, No. 3:13 CV 2085, 2016 WL 75535, at *3 (N.D. Ohio Jan. 7, 2016) (where fax logs unavailable and no theory of generalized proof has been proposed, the district court found it suspect in nature to rely on affidavits from all potential class members certifying receipt of a fax received many years prior).

Without any generalized classwide proof of liability, similar to the fax logs that showed receipt of faxes in the Eighth Circuit's *Sandusky* case, the court would be required to conduct "mini-hearing[s] on the merits of each case" in order to identify class members. *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv,

16-1425-cv, 2017 WL 659894, at *2 (2d Cir. Feb. 15, 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015))(affirming denial of class certification based on the inability to ascertain the class where no list of class members existed). Individual inquiries into the validity of each potential class member's claim to determine if they were "sent" a Vein Centers' junk fax during the period at issue is something that could be accomplished at individual trials, but it there is no objective way to determine it on a class-wide basis. Based on the unique facts of this case, identifying class members through some objective basis is not possible and therefore the class is unascertainable.

### 2. Predominance and Commonality

Class certification is only appropriate where common issues of fact or law predominate over individual questions. Fed. R. Civ. P. 23(b)(3). Common questions are those that can be established through common evidence. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011). Here, the lack of a classwide method for identifying class members results in a lack of cohesiveness and causes individual issues to predominate. Where members of the proposed class cannot prove class membership with proof common to the class, class certification is not proper. *Blades v. Monsanto Co.*, 400 F.3d 562, 572-75 (8th Cir. 2005)(affirming district court's denial of class certification where appellants proffered no common evidence nor identified any yet to be discovered

common evidence which would prove classwide injury). *See also Gene & Gene LLC*, 541 F.3d at 329 (reversing class certification for failure to satisfy the predominance requirement where there was no classwide basis for establishing proof of a TCPA requirement, and therefore proof of class membership); *ASD Specialty*, 2016 WL 75535, at *4 (denying class certification where no fax logs available and where some class members consented to fax, because such circumstances would "overwhelm the common questions" and "devolve into a series of mini-trials, which Rule 23(b)(3) seeks to prevent").

Like *Sandusky,* this case involves the common question of "whether class members received an unsolicited fax advertisement violating the TCPA." 821 F.3d at 998. The Eighth Circuit found the class in *Sandusky* to meet the Rule 23 commonality and predominance requirements because this question was "capable of classwide resolution." *Id.* But in this case, there is no common proof available to make this question resolvable on a classwide basis. This class no longer meets the Rule 23 requirements for class certification.

"Class certification 'is inherently tentative' and may 'require revisiting upon completion of full discovery.' " *Zurn Pex Plumbing*, 644 F.3d at 613 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978); *Blades*, 400 F.3d at 567). Based on the specific facts of this TCPA case and the evidence before the court, I find that there is no objective criterion available to accurately identify

potential class members, making the class unascertainable. In addition, with no common evidence available to apply on a classwide basis, the class lacks commonality and predominance. Because the class requirements of Federal Rule of Civil Procedure 23 are no longer satisfied, I must decertify the class.

### C. Summary Judgment as to Named Plaintiff Heart Center

Vein Centers also argues that the named plaintiff Heart Center cannot show that it is entitled to relief. The copy of the junk fax received by Heart Center's owner, Ronald Weiss, includes a header with a date of transmission; however, only the month and day ("9/15") portion of the date is completely readable – the year is distorted. ECF No. 5-4. At Weiss' deposition, the questioning attorney pointed out to Weiss that the year on the fax was "a little obscured," yet Weiss stated that he received the fax on September 15, 2008. ECF No. 83-2 at 34:6-36:22. According to records from Westfax, it did not send a batch fax transmission for Vein Centers on September 15, 2008, but it did send one to cardiologists exactly one year later on September 15, 2009. ECF No. 83-12 at 13.

In response to Vein Centers' motion for summary judgment, Heart Center has now filed a new declaration from Ronald Weiss stating that he made a mistake in his deposition. He blames the poor quality of the copy of the fax that he was shown at the deposition for what his claimed mistake in saying the fax was received in 2008. ECF No. 106-1. Weiss now states that he received the fax on

– 13 –

September 15, 2009, which he determined after viewing an enlargement of the date area of the copied fax and the original fax received. *Id*. at ¶ 6-10.

Vein Centers argues that Heart Center is creating a sham factual dispute on the date of the fax transmission in order to avoid summary judgment. In most cases, a party cannot avoid summary judgment by filing an affidavit that contradicts previous sworn testimony. *Cole v. Homier distributing Co., Inc.,* 599 F.3d 856, 867 (8th Cir. 2010). But in this case, a factual dispute is not being created – it already exists, and the circumstance of Weiss's deposition testimony is something that a trier of fact should be able to consider in deciding whether plaintiff actually received one of the faxes that defendant sent. I previously denied summary judgment to plaintiff because Weiss testified that he received a fax on a date that defendant denied sending a fax – a clear dispute of fact. Weiss's explanation of his mistake – especially in light of examination of the enlargement – is something that a jury may very well believe. Given the undisputed evidence that the junk fax at issue did come from Vein Centers and that Westfax did send a fax blast to cardiologists, including Weiss, on September 15, 2009, this is not a sham issue created by Weiss's affidavit. ECF No. 83-8 at 4, 102-3 at 1. Vein Centers is not entitled to judgment as a matter of law on Heart Center's TCPA claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Vein Center's motion for summary judgment is denied, but its alternative motion for class decertification [ECF No. 100] is granted. The Rule 23 class in this case is decertified and this case shall proceed as to the named plaintiff St. Louis Heart Center, Inc. only.

**IT IS FURTHER ORDERED** that counsel for the parties shall meet and confer and file, no later than **July 20, 2017** a joint proposed schedule for all steps remaining that are necessary to resolve this case, including proposing several dates that both sides are available for trial and stating the anticipated length of trial. If the parties cannot agree as to any matter, the disagreement must be set out clearly in the joint proposal.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of July, 2017.